IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES WEBB, JWEBB INSURANCE AGENCY, INC., KIMBERLY WEBB, and WEBB INSURANCE AGENCY, LLC, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 22 CV 2812 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs James Webb, JWebb Insurance Agency, Inc. ("Webb Inc."), Kimberly Webb, and Webb Insurance Agency, LLC ("Webb LLC"), (collectively, "plaintiffs") bring this five-count complaint against defendant Allstate Insurance Company ("Allstate" or "defendant") for alleged repudiation of plaintiffs' independent contractor agreements. Count I alleges breach of contract; Count II alleges breach of the implied covenant of good faith and fair dealing; Count III alleges fraud; Count IV alleges intentional infliction of emotional distress; and Count V alleges unjust enrichment. Defendant moves to dismiss Counts II and III of plaintiffs' complaint pursuant to Rule 12(b)(6). Fed. R. Civ. Pro. 12(b)(6). For the reasons discussed below, the court grants defendant's motion (Doc. 17).

**BACKGROUND**

According to plaintiffs, defendant employed local sales agents, like plaintiffs, as independent contractors to sell insurance on behalf of defendant in exchange for commission and the opportunity to build a "valuable book of business." On October 1, 2013, and September 1, 2015, plaintiffs purchased pre-existing Allstate Exclusive Agencies ("EAs") from Allstate, and

1

the parties executed contracts known as R3001C[1] Exclusive Agency contracts ("EA Agreements").[2]  Under the EA Agreements, EAs cannot sell insurance policies from other insurance companies, but when an EA sells an Allstate insurance policy, the value of that policy becomes part of the EA's "book of business."  EAs have economic interests in their books of business, including the ability to sell or transfer their interests at any time so long as defendant approves the buyer.  Plaintiffs allege that EAs have "a reasonable expectation that Allstate will at least consider a potential existing EA buyer of the selling EA's book of business if that existing EA meets the objective qualifications."

In the instant case, plaintiffs James and Kimberly Webb ("the Webbs") were 50-50 co-owners of plaintiffs Webb Inc. and Webb LLC, although James was "Key Person" for Webb Inc. and Kimberly was "Key Person" for Webb LLC.[3]  Plaintiffs allege that defendant knew that the Webbs were co-owners, and that in 2018 and 2019, Allstate employee Dave Miles ("Miles") consulted with the Webbs on "how to improve the sales numbers and/or maintain the economic viability of Plaintiff Kimberly Webb's agency."  Plaintiffs allege that Miles "recommended and approved" certain business practices, including allowing James Webb to "use the money that he would have used for generating leads for his agency and instead apply that money to buy leads for Kimberly Webb's agency," helping it by quoting new business in Webb Inc. while binding it in Webb LLC.  According to plaintiffs, in 2020, Allstate employees responsible for enforcing Allstate policies and procedures against EAs were aware of plaintiffs' business practices and

---

[1] Plaintiffs label these agreements "R3001C Agreements," whereas defendant labels them "R300 IC Exclusive Agency Agreements."  With no indication otherwise, the court assumes that these labels refer to the same agreements.

[2] In their complaint, plaintiffs note that they did not attach "the contractual documents referenced in [the] Complaint" because they are "currently within the possession and control" of defendant.

[3] According to plaintiffs, the "Key Person" is "the one who executes the agreement."

2

"took no action to stop Plaintiffs from continuing."

Later in 2020, Allstate investigator, Todd Fine ("Fine"), interviewed the Webbs "in light of an audit that Defendant Allstate did on [their businesses]." Plaintiffs allege that, during the interviews, Fine did not "opine or indicate that either Plaintiff James or Kimberly Webb engaged in fraud or any other conduct that would result in a termination of [their] contract(s) with Defendant Allstate." Yet on July 27, 2020, other Allstate employees indicated to the Webbs, on separate calls, that their EA Agreements "have been terminated" for fraud in light of Fine's investigation. Plaintiffs allege that they "enjoyed a reasonable expectation that a for-cause termination of their contracts would necessarily exclude conduct and/or business dealings that were <u>approved</u> by Defendant Allstate." (Emphasis in original).

After defendant terminated plaintiffs' EA Agreements, plaintiffs engaged in discussions to sell their agencies. EA Rigo Flores ("Flores") offered to buy James Webb's agency, and James accepted Flores's offer. Under the terms of the EA Agreements, however, defendant had sole discretion to approve or reject a buyer of plaintiffs' agencies. According to plaintiffs, one Allstate employee told plaintiffs that Flores qualified for the purchase with "only one potential obstacle," and another Allstate employee told plaintiffs that Allstate had waived that obstacle as a condition to buy the agency. On July 30, 2020, after a committee within Allstate reviewed the potential sale for approval, plaintiffs allege that James Webb received a call informing him that the committee approved the sale, but the deal would be finalized by Allstate Regional Sales Leader, Brian Viohl ("Viohl"). On August 3, 2020, plaintiffs claim that James Webb received a call that Viohl rejected the sale. According to plaintiffs, Viohl rejected the sale solely because Viohl "personally disliked" James Webb and for failure to satisfy the purportedly waived

condition mentioned above.

Following the rejected sale, James Webb was "forced to sell to a buyer who low-ball[ed] him," and Kimberly Webb was "forced to accept a termination from Allstate that amount[ed] to just a fraction of the value of her agency." Accordingly, plaintiffs filed the instant case for monetary and declaratory relief.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). For a claim to have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." Id.

On the other hand, allegations of fraud must satisfy the heightened pleading standard of Rule 9(b) and "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires the complaint to set out the who, what, when, where, and how of the alleged fraud, United States ex rel. Presser v. Acacia Mental Health Clinic, LLC, 836 F.3d 770, 776 (7th Cir. 2016), although "the exact level of particularity that is required will necessarily differ based on the facts of the case." AnchorBank, FSB v. Hofer, 649 F.3d 610, 615 (7th Cir. 2011).

## DISCUSSION

In the instant case, defendant argues that Counts II and III should be dismissed. According to defendant, the court should dismiss Count II because Illinois law does not

recognize a stand-alone claim for breach of the implied covenant of good faith and fair dealing.[4]

Further, defendant argues that the court should dismiss Count III because plaintiffs fail to satisfy

the heightened pleading requirements under Rule 9(b).

Plaintiffs counter that the court should not dismiss Count II because it is not a stand-alone

claim but rather is a "companion count" to Count I, which alleges breach of contract.  Plaintiffs

argue that the two counts "simply incorporate the factual variances in which Defendant's

conduct breached the text of the agreement (Count I) and acted in a manner contrary to the

reasonable expectations of Plaintiffs (Count II)."  According to plaintiffs, Count II addresses

various instances of abused discretion, and courts have found abuses of discretion to breach the

implied covenant of good faith and fair dealing.  See, e.g., McCleary v. Wells Fargo Sec., LLC,

2015 IL App. (1st) 141287, at ¶ 21, quoting Wilson v. Career Educ. Corp., 729 F.3d 665, 675

(7th Cir. 2013).  Plaintiffs argue that Allstate abused its discretion in exercising its contractual

rights to reject the sale of Webb Inc. and in terminating their EA Agreements for cause.

Defendant, however, emphasizes that the implied covenant is not an independent source

of duties that gives rise to a cause of action, even if it is implied in every contract.  See Voyles v.

Sandia Mortg. Corp., 196 Ill.2d 288, 296 (2001); Beraha v. Baxter Health Care Corp., 956 F.2d

1436, 1443 (7th Cir. 1992).  Rather, the duty of good faith and fair dealing is an interpretive tool

that guides the court in deciphering the terms of a contract and the intent of the parties.[5]  See

Cromeens, Holloman, Sibert, Inc. v. AB Volvo, 349 F.3d 376, 395 (7th Cir. 2003).  Therefore,

defendant argues that courts have dismissed claims for breach of the implied covenant where

---

[4] In its motion, defendant takes no position regarding whether Illinois law applies to this case but assumes that Illinois law applies for the purpose of its analysis here.

[5] To establish a breach of the duty of good faith and fair dealing, a party must show that the contract vested the opposing party with discretion in performing an obligation under the contract and that the party exercised such discretion with bad faith or in a manner that is unreasonable or inconsistent with the reasonable expectations of the parties.  See LaSalle Bank Nat'l Assoc. v. Paramount Properties, 588 F.Supp. 2d 840, 857 (N.D. Ill. 2008).

they are based on the same conduct and duties as the plaintiff's breach of contract claim, as here.

See, e.g., Aggarwal v. Nokia Corp. (In re Wireless Tel. 911 Calls Litig.), No. MDL-1521, 2005

WL 1564978, at *13 (N.D. Ill. June 3, 2005) (determining that a breach of the implied covenant

is "superfluous" where plaintiffs have already asserted a separate breach of contract claim).

The court agrees with defendant that Count II should be dismissed but grants plaintiffs

leave to amend their complaint. The court rejects defendant's argument that plaintiffs should not

be allowed to amend their complaint to the extent that plaintiffs allege the same conduct and

duties. Taking the facts in the light most favorable to plaintiffs, the fact that defendant

undisputedly had broad, textual discretion does not mean that defendant cannot be liable for

exercising its discretion solely in bad faith. Dayan v. McDonald's Corp., 125 Ill. App. 972, 990–

91 (1984). Instead, a party with discretion "must exercise that discretion reasonably and with

proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the

reasonable expectations of the parties." Id.

The Illinois Appellate Court evaluated a similar claim in Slay v. Allstate Corp., 2018 IL

App. (1st) 180133. In a single count, the plaintiff in Slay brought a claim for breach of contract

and alleged that Allstate "materially breached [its] EA Agreement" by failing to approve a

transfer of the plaintiff's economic interest and "also materially breached the covenant of good

faith and fair dealing implied in the EA Agreement." Id. at ¶ 12. The plaintiff argued that

Allstate "refused to approve the sale of [her] business . . . solely for the benefit of [the spouse of

the plaintiff's Allstate manager]," which she claimed was an arbitrary and capricious reason that

breached the implied covenant. Id. at ¶ 13. The appellate court reversed the trial court's

dismissal of plaintiff's claim. Id. at ¶ 34. The court determined that her complaint "pleaded

facts that sufficiently allege[d] an improper motive, amounting to an abuse of discretion of

Allstate's contractual discretion, in violation of its implied duty of good faith and fair dealing," with no legitimate business reason for its conduct.  Id. at ¶ 43.

Here, plaintiffs allege specific instances of bad faith without a legitimate business reason. For example, plaintiffs claim that defendant: falsely reported the contents of plaintiffs' statements; conducted slanted and improper investigations; labeled Allstate-approved conduct as fraudulent conduct; and created a pretextual basis for the termination of their EA Agreements. At the pleading stage, such conduct is plausibly inconsistent with the terms of the parties' contractual agreements.  Further, plaintiffs claim that defendant "feigned" its use of qualifications to evaluate buyers with the bad faith motive of "separat[ing] exclusive agents [such as plaintiffs] from their economic interest in their agency(ies)'s book of business, thereby allowing Defendant Allstate to reduce costs and absorb the agency's premiums to itself." Because such allegations are properly included in a breach of contract count, plaintiff may replead to add this claim to Count I.

Next, defendant argues that the court should dismiss Count III because plaintiffs fail to satisfy the heightened pleading requirements under Rule 9(b).  According to defendant, regarding fraud, plaintiffs allege only that defendant "falsely represented to Plaintiffs that it was undertaking a legitimate investigation into Plaintiffs' business practices" through an investigator. Defendant argues that such an allegation is insufficient under 9(b) because it does not contain any particulars, including the method of representation, its specific content, or when, to whom, and where it was made.

Plaintiffs, on the other hand, argue that they have given defendant adequate notice regarding the claims asserted against it.  They allege that defendant, through investigator Fine, falsely represented to plaintiffs that defendant was undertaking a legitimate investigation into

plaintiffs' business practices. Plaintiffs allege that defendant knew that the investigation "was a sham designed to induce Plaintiffs to provide information about their agencies so that Defendant could use that information against them to acquire Plaintiffs' businesses at a price well below market value." Plaintiffs argue that these allegations provide context for defendant's false representation, such as the exact dates of the Fine's interviews, his manner of interviewing, and the allegedly misleading substantive content of the interviews.

The success of plaintiffs' argument depends on whether they alleged their claim of fraud in their complaint with the same particularity as they do in their response to defendant's motion, which references paragraphs 65–78 of their complaint. The court agrees with plaintiffs that their allegations as articulated in their response are sufficient to satisfy the heightened pleading standard in 9(b). The problem for plaintiffs is defendant's argument that plaintiffs' allegations are not quite as particular in their complaint. That is, defendant argues that plaintiffs "attempt to re-write the Complaint to include specific allegations that do not exist anywhere in the actual Complaint."

The court agrees with defendant that the complaint does not plead facts to sufficiently state "the circumstances constituting the fraud" with the requisite particularity. Most of the statements contained in the referenced paragraphs of plaintiffs' complaint are not allegedly uttered by investigator Fine, but rather are allegedly made to investigator Fine, and these statements are insufficient to plead fraud. Plaintiffs have not alleged any specific statement by Fine beyond his indication that "his role is just to collect information, not to make decisions as to wrongdoing," in light of an audit. In their complaint, plaintiffs do not identify a specific alleged misrepresentation by Fine that Allstate was conducting "a legitimate investigation."

Defendant also argues that the court should dismiss Count III even if plaintiffs amend

8

their complaint to include a specific representation that defendant was conducting a legitimate investigation. Defendant argues that it is not clear "how a statement that Allstate was undertaking 'a legitimate investigation' evinces a reasonable inference that Allstate knowingly made a false statement with the intent to induce Plaintiffs to act."[6] Defendant cites McGuire v. LORD Corp., 456 F. Supp. 729 (E.D.N.C. 2020), to suggest that a defendant's indicated intent to conduct an "investigation into the misconduct" is "ambiguous, has no definite terms, characteristics, or conditions, and thus is not an actionable fraudulent misrepresentation." Id. at 747. Obviously, these arguments are premature because plaintiff has not had an opportunity to file an amended fraud count that conforms to the court's ruling.

## CONCLUSION

For the reasons set forth above, the court grants defendant's motion to dismiss (Doc. 17) without prejudice. Plaintiffs are granted leave to amend their complaint as consistent with this decision on or before November 30, 2022. Defendants shall respond to the amended complaint on or before December 23, 2022. The parties are directed to file a joint status report using this court's form on or before December 31, 2022.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: November 9, 2022**

---

[6] Under Illinois law, the elements for fraudulent misrepresentation are: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance. Doe v. Dilling, 228 Ill.2d 324, 342–43 (2008); Connick v. Suzuki Motor Company, Ltd., 174 Ill.2d 482, 496 (1996).