IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES WEBB, JWEBB INSURANCE AGENCY, INC., KIMBERLY WEBB, and WEBB INSURANCE AGENCY, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 22 CV 2812 |
| v. | ) ) | Judge Robert W. Gettleman |
| ALLSTATE INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs James Webb, JWebb Insurance Agency, Inc. ("Webb Inc."), Kimberly Webb, and Webb Insurance Agency, LLC ("Webb LLC"), (collectively, "plaintiffs") bring this four-count first amended complaint against defendant Allstate Insurance Company ("Allstate" or "defendant") for alleged repudiation of plaintiffs' independent contractor agreements. Count I alleges breach of contract; Count II alleges fraud; Count III alleges intentional infliction of emotional distress; and Count IV alleges unjust enrichment. Defendant moves to dismiss Count II pursuant to Rule 12(b)(6). Fed. R. Civ. Pro. 12(b)(6). For the reasons discussed below, the court grants defendant's motion (Doc. 25).

## BACKGROUND

Defendant employs local sales agents, like plaintiffs, as independent contractors to sell insurance through Allstate Exclusive Agencies ("EAs"), in exchange for commissions and a "book of business." Under the terms of their agreements, EAs cannot sell insurance policies from other insurance companies, but when an EA sells an Allstate insurance policy, the value of that policy becomes part of the EA's book of business. On October 1, 2013, and September 1,

2015, plaintiffs James and Kimberly Webb ("the Webbs") purchased two pre-existing EAs from defendant (plaintiffs Webb Inc. and Webb LLC).

According to the amended complaint, Allstate investigator, Todd Fine ("Fine"), interviewed the Webbs. On April 24, Fine called James Webb ("James") and told him that Fine worked for defendant's investigative services team and wanted to schedule a time to "talk." James alleges that he "thought the call was made to him because a customer may have made a complaint." On April 27, plaintiffs allege that Fine "conduct[ed] a video (Skype) interrogation of Plaintiff James Webb, in light of an audit that Defendant Allstate did on his business." Plaintiffs allege that Fine conducted a similar exchange with Kimberly Webb on April 29.

Count II focuses on Fine's interactions with the Webbs during these calls, which plaintiffs allege were fraudulent. According to plaintiffs, defendant, by and through Fine, intentionally "omitted and hid" that defendant employed Fine "in an adversarial role" relative to plaintiffs, and that his job "did not require him to get to a full understanding of the facts." Rather, plaintiffs allege that Fine's employment "require[d] him to bolster Allstate's previously made, self-serving opinion that Plaintiffs had engaged in fraud." According to plaintiffs, defendant had already formed the opinion that plaintiffs had committed fraud "based on [its] over-blown, self-serving, distorted interpretation of audit information." Plaintiffs allege that Fine's role as investigator was part of defendant's ongoing effort and operation to use plaintiffs' statements against them and accuse them of fraud, and that Fine knew of his role in this effort.

During the interviews, plaintiffs claim that Fine did not "opine or indicate that either Plaintiff James or Kimberly Webb engaged in fraud or any other conduct that would result in a termination of [their] contract(s) with Defendant Allstate." On the April 27 call, at approximately 2:08 p.m. to 5:00 p.m., Fine represented to plaintiffs, "[t]hat a matter has come up

from an audit and I was hoping you could provide me some assistance to that." On the April 29 call, plaintiffs allege that Fine stated that, "my job is simply as a fact finder," "I'm simply gathering information," and "my role at this point is to get facts."

On July 27, 2020, other Allstate employees indicated to the Webbs that their EA Agreements had been terminated for fraud in light of Fine's investigation. Plaintiffs allege that they were injured when "they were baselessly accused of fraud by Defendant," "[a]s a result of their reliance on Mr. Fine's/Defendant Allstate's false representations."

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). For a claim to have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations of fraud must satisfy the heightened pleading standard of Rule 9(b) and "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires the complaint to set out the who, what, when, where, and how of the alleged fraud, United States ex rel. Presser v. Acacia Mental Health Clinic, LLC, 836 F.3d 770, 776 (7th Cir. 2016).

## DISCUSSION

Defendant argues that Count II should be dismissed because plaintiffs fail to satisfy the heightened pleading requirements under Rule 9(b) and state a claim for fraudulent misrepresentation under Illinois law. In its November 9, 2022, opinion, this court dismissed plaintiffs' claim for fraud because it concluded that the original complaint did not contain particularized details about the alleged fraud, as required by Rule 9(b). The court gave plaintiffs

3

leave to amend their complaint because it determined that plaintiffs articulated sufficiently

particularized details in their briefs.[1]

To state a claim for fraudulent misrepresentation in Illinois, a plaintiff must allege: (1) a

false statement of material fact; (2) known or believed to be false by the person making it; (3) an

intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance upon the truth

of the statement; and (5) damage to the plaintiff resulting from such reliance.  See Toulon v.

Cont'l Cas. Co., 877 F.3d 725, 734 (7th Cir. 2017).  Because federal complainants are subject to

the heightened pleading requirement in Rule 9(b), a federal plaintiff's claim of fraud under

Illinois law must provide particularized allegations to establish each element of the claim.

In line with the court's previous admonition for plaintiffs to amend their complaint as

consistent with the court's prior decision, plaintiffs' first amended complaint contains

particularized allegations.  Plaintiffs identify specific statements made by Fine, on specific days,

at specific times, that they argue are fraudulent.  Plaintiffs acknowledge, however, that defendant

does not contend "that the fraud claim lacks the requisite particularity; rather, defendant contends

that Plaintiffs purportedly failed to establish the elements of a claim for fraudulent

misrepresentation under Illinois law."

First, defendant argues that plaintiffs have not alleged an actionable false statement of

material fact.  According to defendant, Fine's representation that he contacted the Webbs

because "a matter has come up from an audit" is a true statement.  Plaintiffs do not dispute that

there was an audit; instead, they argue that such statement was a lie because an audit-related

---

[1] The court stated that "[t]he court agrees with plaintiffs that their allegations as articulated in their response are sufficient to satisfy the heightened pleading standard in 9(b).  The problem for plaintiffs is defendant's argument that plaintiffs' allegations are not quite as particular in their complaint.  That is, defendant argues that plaintiffs 'attempt to re-write the Complaint to include specific allegations that do not exist anywhere in the actual Complaint.'"

"matter" is not what led to the investigation. The court is not persuaded by plaintiffs' conclusory

explanation, which contradicts other well-pled allegations in the complaint. For example,

plaintiffs allege that defendant's preconception of plaintiffs' fraud was "based on [its] over-

blown, self-serving, distorted interpretation of <u>audit information</u>," and that Fine "concealed his

role as an adversary to frame incomplete <u>audit information</u> as fraud." (Emphasis added).

Assuming, as the court must at this stage, that defendant was engaged in an ongoing effort to use

plaintiffs' statements against them, plaintiffs themselves claim that Fine's investigation was

based on audit information. Thus, Fine's representation was accurate and cannot constitute

fraud.

Plaintiffs' next assertion is that Fine fraudulently misrepresented his role in defendant's

investigation by indicating that he was a "fact finder." According to plaintiff, calling himself a

fact finder suggested that Fine was a neutral arbiter of facts, not plaintiffs' adversary. The court

agrees that a "fact finder" is generally an impartial collector of facts. According to Merriam-

Webster, a fact finder is "one that tries to determine the realities of a case, situation, or

relationship, especially: an impartial examiner designated by a government agency to appraise

the facts underlying a particular matter." ("Fact finder." Merriam-Webster.com Dictionary,

Merriam-Webster, https://merriam-webster.com/dictionary/fact%20finder, last accessed Feb. 16,

2023). Even if Fine's "real role" was to "support Allstate's unreasonable interpretation of its

own data," there is no indication that Fine collected anything except the facts as plaintiffs

presented them to him, although the court accepts at this stage that Fine collected some

unfavorable facts that subsequently "enabled" defendant to act in a manner that is unsatisfactory

to plaintiffs. Plaintiffs allege that Fine "gather[ed] information for Allstate"; this role makes

Fine a fact finder, even if a pretextual one, and Fine's representations do not establish an

actionable claim for fraud.[2]

Last, the court rejects plaintiffs' allegation that Fine misrepresented that he was "hoping that [plaintiffs] could provide [him] some assistance," which plaintiffs claim "hid" the fact that Fine was an adversary. As defendant argues, this representation is not an actionable "statement of fact" because it was a present expression of Fine's future expectations. See Razdan v. Gen. Motors Corp., 979 F. Supp. 755, 759 (N.D. Ill. 1997), aff'd, 234 F.3d 1273 (7th Cir. 2000).

Relatedly, the court rejects as actionable fraud any allegations that Fine "hid" or "concealed" his role an investigator who was engaged in an ongoing scheme to frame plaintiffs' statements against them. See, e.g., Bly & Sons, Inc. v. Ethan Allen Interiors, Inc., No. 05-CV-668, 2006 WL 149001, at *3 (S.D. Ill. Jan. 19, 2006) ("Plaintiff theorizes that this was Defendants' intention from the beginning–to induce Plaintiff to do something to give Defendants arguable grounds for terminating the franchise. The problem with Plaintiff's theory is that it is not actionable fraud under Illinois law."). The court agrees with defendant that plaintiffs, in their brief, improperly attempt to recast their allegations of fraudulent misrepresentation as fraudulent concealment. Fraudulent concealment is a separate claim, with distinct elements, including a duty to disclose, which plaintiffs have not attempted to allege here. See, e.g., Toulon v. Cont'l Cas. Co., 877 F.3d 725, 737 (7th Cir. 2017).

---

[2] Because the court concludes that plaintiffs fail to plausibly allege a false statement of material fact, the court does not address whether plaintiffs justifiably relied on Fine's alleged misrepresentations to discuss their business affairs with defendant, which they "never would have otherwise disclosed."

## <u>CONCLUSION</u>

For the reasons set forth above, the court grants defendant's motion to dismiss Count II (Doc. 25), with prejudice. Defendant is directed to file an answer to the remaining counts on or before March 15, 2023. The parties should file a joint status report using the court's form on or before March 29, 2023.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: February 27, 2023**